[Civil No. 2411.   Filed February 17, 1926.]

[243 Pac. 402.]

JOHN H. WILLIAMS, Appellant, v. MATTIE L. WILLIAMS, Appellee.

1. JUDGMENT.—Jurisdiction of superior court to render judgment is not lost, under Constitution, Article 6, section 15, by lapse of more than 60 days after submission of case before decision.

2. DIVORCE—FAILURE TO RENDER JUDGMENT REGARDING COMMUNITY PROPERTY NOT GROUNDS FOR REVERSAL (LAWS 1919, CHAP. 65).— In action for limited divorce, failure of court to render judgment in regard to community property *held* not ground for reversal, in view of Laws of 1919, chapter 65, providing that, in absence of division of such property, it shall be held by parties as tenants in common.

3. CONTRACTS.—A contract before marriage, whereby wife waives right to support by husband during coverture, is contrary to public policy.

4. CONTRACTS.—A contract in advance of marriage, providing that husband shall be relieved from burden of supporting wife in event of divorce, is contrary to public policy and unenforceable.

5. DIVORCE.—In divorce action, verdict of jury is only advisory, and may be disregarded by the court.

6. DIVORCE—EVIDENCE OF CONDUCT CALCULATED TO HUMILIATE AND WORRY WIFE, SO AS TO AFFECT HER HEALTH, HELD TO JUSTIFY DIVORCE FOR CRUELTY.—Evidence that husband had not furnished proper and adequate support for two years, and had deserted wife without cause, and consorted with another woman, aiding her in suing his wife for slander, is sufficient to justify divorce on grounds of cruelty as being conduct calculated to humiliate and worry her to such an extent as to seriously affect her health.

See (1) 34 C. J., p. 64, n. 55.  (2) 19 C. J., p. 195, n. 40; 31 C. J., p. 170, n. 4 New.  (3, 4) 13 C. J., p. 464, n. 75 New; 30 C. J., p. 516, n. 46; p. 517, n. 56, 56 New.  (5) 19 C. J., p. 154, n. 97. (6) 19 C. J., p. 49, n. 39; p. 142, n. 52.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Richard Lamson, Judge. Affirmed.

Mr. R. E. L. Shepherd and Mr. Earl Anderson, for Appellant.

Messrs. Barnum & Flanigan, for Appellee.

LOCKWOOD, J.—Mattie L. Williams, hereinafter called appellee, instituted this action against John H. Williams, hereinafter called appellant, in the superior court of Maricopa county, asking for a limited

---

3.  Validity of antenuptial contract by husband or wife to support the other, see note in 15 L. R. A. (N. S.) 491. See, also, 13 R. C. L. 1013.

4.  Validity of antenuptial contract fixing rights of parties in case of subsequent divorce, see notes in 23 L. R. A. (N. S.) 880; L. R. A. 1918A, 384.

6.  Cruelty and inhuman treatment as grounds for divorce, see notes in 18 L. R. A. (N. S.) 304; 34 L. R. A. (N. S.) 360.

divorce and suitable support. In her complaint appellee charged appellant with wilful desertion and cruelty; also alleging that there was a large amount of community property, and that he had failed properly to support her for more than two years. Appellant answered by a general denial, and specially pleaded that, before the marriage of the parties, they had entered into a contract in writing which reads as follows: ·

"Agreement.

"This agreement, made and entered into this 20th day of July, 1912, by and between John H. Williams, party of the first part, and Mattie L. Banks, party of the second part, both of Phoenix, Arizona, witnesseth: Whereas, a marriage is intended to be solemnized between the above-named parties and in view of the fact that after their marriage, in the absence of any · agreement to the contrary, their legal relations and powers may be other than these which they desire to have apply to their relations, powers and capacities:

"Now, therefore, the above-named parties declare, each of them does hereby declare it to be his and her desire that during their marriage each of them shall be and continue completely independent of the other as regards the enjoyment and disposal of all property owned by either of them at the commencement of their marriage, and each of the said parties hereby agrees with the other in consideration of said proposed marriage that all property belonging to either of them at the commencement of said marriage shall be enjoyed by him or her and be subject to his or her disposition as his or her separate property in the same manner as if the said proposed marriage had never been celebrated and free from all claim or control of the other.

"It is further agreed by and between the parties hereto that in case the parties hereto should after said marriage at any time or for any cause or reason cease to live together or cease to maintain the relation of husband and wife, or in case said marriage shall

be dissolved by the decree of any court, then and in such case or event, the party of the first part shall pay to the party of the second part the sum of five hundred ($500.00) dollars which shall be in full satisfaction and settlement of all claims and demands against the party of the first part, or his property.

"It is further agreed that any property now or hereafter acquired by either of the parties hereto, the title to which stands or shall stand in the name of the party so acquiring the same, shall be and be deemed conclusively the separate property of the party so acquiring the same and in whose name the title stands or shall stand, and all such property may be sold or disposed of or mortgaged by the party in whose name the title thereto stands or shall stand without the consent or signature of the other.

"In witness whereof the said parties have hereunto set their hands this 30th day of July, 1912.

"JOHN H. WILLIAMS.
"MATTIE. L. BANKS."

He alleged his readiness to pay the $500 set forth in said contract and denied there was any community property. He also filed a cross-complaint asking for an absolute divorce on the ground of the extreme cruelty of appellee. A reply to this cross-complaint was duly made, denying the allegations thereof, and setting up a certain judgment in a previous action as *res adjudicata*. The case was tried to a jury, which answered twelve interrogatories, some in favor of appellant's theory of the case, and some in favor of appellee's. The trial court made findings of fact and on these findings rendered judgment in favor of appellee for a limited divorce and for $100 a month to be paid by appellant for her support, and denied him any relief under his cross-complaint. Motion for new trial was duly made and overruled, and from the judgment an appeal was taken to this court.

There are some six assignments of error which we will consider as seems advisable. The first is that

the court had lost jurisdiction to render any judgment whatever, since more than sixty days had passed after the submission of the case before it was decided. This assignment is based upon article 6, section 15, of the Constitution, which reads as follows:

"15. Every case submitted to the judge of a superior court for his decision shall be decided within sixty days from the submission thereof. . . . "

It is contended by appellant that this provision of our Constitution is mandatory, and therefore, if the court fails to render a decision within the sixty days, its jurisdiction is lost. This question has been before the Supreme Court of Washington in the case of *Demaris* v. *Barker,* 33 Wash. 200, 74 Pac. 362.

Section 20, article 4, of the Washington Constitution is almost *verbatim* like ours, except that the period fixed is ninety instead of sixty days, and that Constitution, also like ours, states that its provisions are mandatory, unless by express words they are declared to be otherwise: The contention was raised in the case cited that the court had lost jurisdiction, as in this one. The Washington court, in passing upon this, said:

"It seems to us, however, that such a construction of the section would be directly subversive of its purpose. Manifestly the purpose of the provision was to secure a speedy determination of causes submitted to the court for decision. 'The law's delay' is not a modern phrase. Judges of the old time were not wholly unlike some of their successors in office. They, too, were inclined to waver between two opinions, fearful to pronounce the one lest the other should be deemed the more powerful, and delays caused thereby have at all times been more or less prevalent, and have always been regarded as something of an unmixed evil when viewed from the standpoint of a litigant or the public. It was to furnish a remedy for this that this clause of the Constitution was

adopted. It was thought that judges, who derived their authority from that instrument, would obey its behests, or, if they did not, that some means would be found to coerce obedience; or, indeed, it may have been thought that disobedience would be grounds for an impeachment; but certainly it was never thought that the remedy was to be found in the holding that the judgment afterwards rendered is nugatory. To give it this construction is to prolong the very evil it was sought to avoid, and to punish the very persons whom it was intended should be its beneficiaries. If the judgment, when rendered, is to be declared void, then the litigants, who have already been subjected to an unconstitutional delay, must again be subjected to the additional delays necessary to again bring the cause to the condition it was before the court violated its sworn duty. They must also pay the accruing costs necessary for that purpose. Were the delay something within the control of the litigant, were it caused by his own dereliction, the conclusion contended for might be tolerated. But the litigant cannot control the action of the court after he has submitted his cause for its decision. From that time on it rests within the will of the judge, and the law provides no means by which a litigant can coerce him into action, until, at least, the limit of time has expired which is here thought to render action nugatory. To punish the litigant for the wrongs of the court which he has no power to prevent, is not, we repeat, the purpose of this constitutional provision, and to so hold would be subversive of its intent."

There is no merit in this contention.

The second assignment of error is that the court failed to render any judgment in regard to the community property of appellant and appellee. It is true the jury did find that there was some community property, but did not specify what it was. The statute expressly provides that, if the judgment does not divide the community property, it is held by the parties as tenants in common. Chapter 65, Session Laws of 1919. We do not think the failure

of the court to act upon this point should cause a reversal of the judgment.

The third assignment of error is to the effect that the judgment in the suit pleaded in the reply as *res adjudicata* against appellant's cross-complaint is really *res adjudicata* against her on her original complaint herein. We have examined the proceedings and the record on this point, and we are satisfied that neither appellee nor appellant was barred by the record in that case from maintaining their respective positions in the present action.

This brings us to the fourth and vital assignment. It is contended that the agreement above set forth is binding on the parties as to a settlement for all claims for support of appellee by appellant, and that, since he has always been ready, able and willing to pay the $500 set forth therein, the court has no right to award any further or greater sum. There is no question as to the terms of the agreement, nor that it was entered into by the parties without any fraud or undue influence being exercised. It was, however, urged at the trial that that portion which limits the amount which can be recovered by appellee from appellant to $500 is contrary to public policy and void, so far as support is concerned, and so the trial court found. It may be that such an agreement is perfectly valid in settling any rights which appellee acquired in the separate property of appellant by reason of the marriage. We, however, are decidedly of the opinion that it is void and contrary to public policy when the question of support to be adjudicated by a court in the case of either a limited or absolute divorce is involved. It is the duty of the husband to provide support for his wife during coverture. *Rariden* v. *Mason*, 30 Ind. App. 425, 65 N. E. 554; 30 C. J. 516. A contract in advance of the marriage whereby the wife waives such a right would certainly

be contrary to public policy. *Ryan* v. *Dockery,* 134 Wis. 431, 126 Am. St. Rep. 1025, 15 L. R. A. (N. S.) 491, 114 N. W. 820.

We think it is equally contrary to public policy for the parties to contract in advance that, if through the fault of the husband his wife is granted a divorce, he shall nevertheless be relieved under any and all circumstances from the burden of providing support for his wife in such amount as the court may deem proper. *Watson* v. *Watson,* 37 Ind. App. 548, 77 N. E. 355; *Neddo* v. *Neddo,* 56 Kan. 507, 44 Pac. 1; *Pereira* v. *Pereira,* 156 Cal. 1, 134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488. To hold to the contrary would be equivalent to holding that a man may contract in advance to be relieved from liability for his own negligence, tort or even crime. We have examined the cases cited by counsel for appellant and we are satisfied that they are either not in point or are unsound in principle.

The fifth and sixth assignments of error are to the effect that the judgment is contrary to law and the evidence and the verdict of the jury. Taking these objections in the inverse order, the verdict of the jury is only advisory, and was expressly disregarded in many respects by the court. *Donahue* v. *Babbitt,* 26 Ariz. 542, 227 Pac. 995.

The evidence in the record, while conflicting, would fairly sustain the findings made, and they were to the effect that for more than two years the appellant had not furnished proper and adequate support to appellee; that he had deserted her without cause, had consorted with another woman, and had aided her to the utmost of his power in suing his wife for slander. Our modern law has gone far beyond the place where cruelty must consist of physical abuse in order to give rise to an action for divorce. It is obvious to any thinking man that a husband may be guilty of the most

extreme cruelty to his wife without laying the weight of his finger upon her, and *vice versa.* We are satisfied that the conduct found by the trial court is calculated to humiliate and worry any loving wife to such an extent as to seriously affect her health, and justify a divorce on the grounds of cruelty.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.