93 Ariz. 129 (1963)
379 P.2d 119
In the Matter of the ESTATE of William W. MACKEVICH, aka Witold Mackevich, and aka William Mackevich, deceased.
Raymond YVOSKIS, Appellant,
v.
Andromeda MACKEVICH, Appellee.
No. 6955.
Supreme Court of Arizona. En Banc.
February 27, 1963.
*130 Charles Christakis and Peterson, Sullivan & Estrada, Phoenix, for appellant.
Cunningham, Carson & Messinger, Phoenix, for appellee.
UDALL, Vice Chief Justice.
This is a will contest. The proponent of the will is the decedent's nephew, the contestant his surviving spouse. The issues were tried to the court, and judgment was entered in favor of the wife, appellee in this court. The lower court ruled that decedent's will was revoked by operation of law as a result of his subsequent marriage to the appellee.
The facts are these: In 1952 William or Witold Mackevich, the deceased, made a will naming his then wife Sarah as primary beneficiary and executrix and naming *131 his nephew, Raymond Yvoskis, the proponent-appellant, as secondary beneficiary and alternate executor. Sarah predeceased William by about two years. Shortly after Sarah's death, William met the appellee, Andromeda, and a courtship of a year and a half's duration ensued. In contemplation of their decision to marry, William and Andromeda contacted a real estate broker with whom Andromeda was acquainted and requested that he draw for them an agreement to assure each would continue in the ownership of his or her separate property in the event their impending marriage resulted in a divorce.[1] The following was produced:
 "AGREEMENT
 Phoenix, Arizona
 October 21, 1957
This agreement entered into by and between William W. Mackevich and Andromeda DeLancy,
WITNESSETH: Wherein the above mentioned are contemplating entering the Holy Bonds of Matrimony, and both parties now own real property previous to this marriage, be it understood and agreed that when at such time as either one shall pass away by death, then such real property shall be divided as follows:
One-half shall go to the heirs of the deceased person, and One-half go to the surviving spouse;
All real property acquired during this marriage and all personal property owned at the time of death shall go to the survivor of this union, and
Should this marriage fail and end in a divorce, then all properties held personally before this marriage shall be retained by such person as it were before marriage and that there will be no unfair advantage taken by either party in any circumstances."
This instrument was signed by William and Andromeda and acknowledged before the realtor-draftsman, who was also a notary public.
On October 24th, 1957, William and Andromeda were married. About six weeks after the marriage the couple was involved in an automobile accident. William died from injuries sustained in this accident on January 12, 1958.
Andromeda petitioned for letters of administration and the appellant petitioned for letters testamentary and for probate of the 1952 will. At a consolidated trial the court *132 ruled in favor of Andromeda, holding that the will was revoked by operation of A.R.S. § 14-134.[2] The court further held that the agreement made by William and Andromeda three days prior to their marriage violates A.R.S. § 25-201[3] and was therefore void.
The appellant contends that the agreement of October 21, 1957 is a valid prenuptial agreement or marriage contract which makes provision for the decedent's wife and thereby precludes the revocation of his will by operation of A.R.S. § 14-134. He argues that A.R.S. § 25-201 must be limited to apply only to agreements which attempt to alter the statutory pattern of descent of community property, citing Williams v. Williams, 29 Ariz. 538, 243 P. 402 (1926) in support of this proposition. This limitation is necessary, he states, to give meaning to A.R.S. § 14-134 which obviously contemplates that valid marriage contracts may make provision for the wife out of the husband's separate property. In addition, he contends that the appellee is estopped to assert the invalidity of the agreement because William Mackevich entered into his marriage with her in reliance upon the effectiveness of this agreement.
The appellant misconceives the significance of the Williams decision, supra. There the parties entered into an antenuptial agreement that each would have independent control during the marriage of separate property owned before the marriage and also agreed upon a settlement to be effective in case of divorce. The Court said, "[i]t may be that such an agreement is perfectly valid in settling any rights which appellee acquired in the separate property of appellant by reason of the marriage," and then held the provisions relating to a divorce settlement invalid. Since the Williams agreement in no way purported to govern the distribution of separate property at the death of either party, the quoted dictum is not authority that A.R.S. § 25-201 is limited in application to agreements involving community property. Furthermore, we cannot agree with appellant that unless this section is so limited it must necessarily *133 be violated by any marriage contract providing for the wife out of separate property as contemplated by A.R.S. § 14-134. Many forms of ante-nuptial marriage contracts, such as present transfers of money or property, executory agreements to transfer property, agreements to devise or bequeath property, and agreements to settle trusts do not have any effect in altering statutory patterns of descent and distribution.
It is true that ante-nuptial agreements which would violate A.R.S. § 25-201 have been upheld in jurisdictions not having similar statutes. Typical of these is the agreement of the husband that a lump sum or set portion of his estate will be paid to the wife out of the husband's estate if she survives as his widow. In return the wife agrees to renounce any other claim she may have upon her husband's estate. E.g. Veeder v. Veeder, 195 Iowa 587, 192 N.W. 409, 29 A.L.R. 191 (1923) and cases cited annot. 1 A.L.R.2d 1260 (1948). Fairness dictates that such contracts be upheld in states where the statutory right of a widow to take a forced share of her husband's estate may result in injustice where parties marry late in life and have children by previous marriages.
But our legislature has established different policies. Our community property laws assure to a wife her share of community property acquired during the marriage, and she is given no right to share in her husband's separate estate against his will. Thus, fairness does not require she be permitted to renounce such a right. On the contrary, A.R.S. § 25-201 provides that the parties to a prospective marriage cannot, by contract, alter statutory patterns of intestate succession, either by attempting to establish a new order of descent, or by renouncing, in advance, rights of intestate succession which result from the marriage. Settlements agreed upon by the parties must be accomplished by legally recognized inter vivos or testamentary methods. See Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792 (1890) and other cases decided under Tex.Civ.Stat. art. 4610, the statute from which A.R.S. § 25-201 was adopted.
The ante-nuptial agreement of William Mackevich and Andromeda DeLancy does not purport to alter presently existing property rights. By it, the parties neither act nor promise to act in the future to transfer property by legally recognized methods. Its intended effect is to establish an order of descent of property at the death of one of the spouses,[4] which *134 order of descent differs from that established by the laws of this state. For this reason the agreement is in direct violation of A.R.S. § 25-201 and is invalid.
Coincidentally, the distribution of William's property which would be made if the agreement were effective appears to be the same as that dictated by the governing statutes. The appellant has made nothing of this point, and this coincidence does not change our decision. The agreement itself has as its object the fixing of one order of distribution where the statutes provide several patterns of distribution depending on the circumstances. If Andromeda (who had an adult daughter) had been the first to die, the distribution plan of the agreement would have substantially varied from that dictated by the statutes. The same would be true if William and Andromeda would have had a child of their marriage.
Appellant contends, however, that the appellee is estopped to deny the validity of the agreement and the will. He cites Biggerstaff's Ex'rs v. Biggerstaff, 95 Ky. 154, 23 S.W. 965 (1893) where the parties to an ante-nuptial contract agreed that neither would have an interest in the property of the other during the marriage. The court assumed the agreement to be valid and held that the widow had no interest which would permit her to contest probate of the will. The decision does not rest on the theory of estoppel. Other cases where this theory was applied contain the elements of a valid estoppel, e.g. Lant's Appeal, 95 Pa. 279, 40 Am.Rep. 646 (1880); Hudnall v. Hamm, 183 Ill. 486, 56 N.E. 172, 48 L.R.A. 557 (1899). These elements are missing in the present case as the lower court found that William Mackevich did not enter into marriage in reliance upon provisions of the agreement relating to disposition of property at the death of either party. This finding is amply supported by evidence that the terms of this portion of the agreement were inserted by the draftsman without the knowledge of either of the parties to the agreement, and that after the agreement was prepared, neither of the parties read it. The charge of estoppel is without merit.
It follows that, as no provision was made for the wife by a valid and effective marriage contract, the 1952 will was revoked by operation of law under A.R.S. § 14-134, In re Anderson's Estate, 14 Ariz. 502, 131 P. 975 (1913); Corker v. Corker, 87 Cal. 643, 25 P. 922 (1891).
There was no error and the judgment is affirmed.
BERNSTEIN, C.J., and STRUCKMEYER, JENNINGS and LOCKWOOD, JJ., concur.
NOTES
[1] William's first wife, Sarah, had commenced divorce proceedings against him before her death, and the possibility that Andromeda would "broom him out" concerned him. We are not called upon to decide the validity of the provisions of this agreement relating to divorce settlement. Cf. Williams v. Williams, 29 Ariz. 538, 243 P. 402 (1926).
[2] "A.R.S. § 14-134. Presumption of revocation of will by subsequent marriage of testator

"If after making a will, the testator marries and the wife survives him, the will is presumed to be revoked unless provision has been made for the wife by marriage contract, or unless she is provided for in the will, or is mentioned therein in such way as to show an intention not to revoke the will, but no other evidence to rebut the presumption of revocation shall be received."
[3] "A.R.S. § 25-201. Ante-nuptial contracts; limitations; execution by minor

"A. Parties intending to marry may enter into agreements not contrary to good morals or law. They shall not enter into an agreement or make a renunciation the object of which is to alter the law of descent of property either with respect to themselves or inheritance by their children or posterity which either may have by any other person, or with respect to their common children. * * *"
[4] It appears as a point of interest that if, as appellant desires, the agreement were held to be valid and to control the distribution of William's property, the appellant would not share in this distribution. The gift of one half of William's separate property to his "heirs" requires reference to the intestate pattern of distribution and under A.R.S. § 14-201(2.), since William had no surviving father or mother, this half also goes to his wife.