DWIGHT W. ELLIS, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5170–66. Filed October 28, 1968.

*Morris K. McClintock,* for the petitioner.
*Joel Gerber,* for the respondent.

---

[9] SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS.

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioner's 1963 gift tax in the amount of $4,468.48. Subsequently, petitioner claimed an overpayment of gift tax in the amount of $19,495.47, in addition to denying the amount of the gift tax determined by the Commissioner. The only question for our determination is whether petitioner made a gift to the "Viola Ellis Trust" during 1963 and if so, the amount of that gift.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations and exhibits attached thereto are so found and are incorporated herein by this reference.

Petitioner, Dwight W. Ellis, Jr., resided in Scottsdale, Ariz., at the time the petition to this Court was filed. Petitioner moved from Massachusetts to Arizona during 1963, and filed his gift tax return for the taxable year 1963 with the district director of internal revenue, Phoenix, Ariz.

On August 14, 1963, at Reno, Nev., petitioner and Viola Clow (hereinafter referred to as Viola) executed an antenuptial agreement and thereafter on the same day they were married.

The antenuptial agreement was as follows:

MRS. VIOLA CLOW
*Scottsdale, Arizona*
MY DEAR VIOLA,

In contemplation of our forthcoming marriage to each other and in consideration of your agreements described in this letter, I agree that I will transfer certain securities, totaling approximately $200,000.00 in value, to Valley National Bank of Phoenix, Arizona, as trustee, under an Agreement of Trust, substantially in the form attached hereto, which will be executed and take effect within thirty (30) days following our marriage, and I hereby release any rights I would otherwise have, at your death, to claim curtesy, homestead, community estate, as your statutory heir at law or otherwise, and agree not to claim, as your surviving husband, any such rights in your estate and not to waive or contest the allowance of any Will of yours. I further disclaim any interest in any property, separate or community, you now have, including any accumulations or increases, and I will execute and deliver to you any and all further instruments necessary or expedient to effectuate the purpose and intent of this agreement in the future.

I am doing this pursuant to the plan you and I have previously discussed and agreed to, which is that, in consideration of my said release and agreement, you hereby release any rights you would otherwise have, at my death, to claim a widow's allowance, dower, homestead, community estate, as my statutory heir at law or otherwise, and agree not to claim, as my widow, any such rights in my estate and not to waive or contest the allowance of any Will of mine, and, in the event of our legal separation or divorce, you hereby release any rights you would otherwise have to claim or receive separate support or alimony, as the case may be. You further disclaim any interest in any property, separate or community, I now have, including any accumulations or increases, and you will

184

execute and deliver to me any and all further instruments necessary or expedient to effectuate the purpose and intent of this agreement in the future.

If the above expresses our agreement to your satisfaction, please so indicate by signing in the space provided for your signature at the end of this letter.

Sincerely yours,

Witness:

(S) JOHN T. McLAUGHLIN

(S) Dwight W. Ellis, Jr.
DWIGHT W. ELLIS, JR.

Agreed accordingly:

Witness:

(S) DORIS L. CLARK

(S) Viola Clow
VIOLA CLOW

Reno, Nev.
~~Scottsdale, Arizona~~

August 14th, 1963

On September 13, 1963, petitioner executed an agreement of trust (known as the Viola Ellis Trust, hereinafter sometimes referred to as the trust) pursuant to the antenuptial agreement, and transferred $200,100 in cash to the Valley National Bank of Arizona as trustee.

The agreement of trust provided as follows:

AGREEMENT OF TRUST

DWIGHT W. ELLIS, JR., of Scottsdale, Arizona, donor, hereby transfers the property listed in the attached Schedule A to THE VALLEY NATIONAL BANK OF ARIZONA, a national banking institution, trustee, and the trustee hereby agrees to hold such property and all additions thereto in trust, as follows:

FIRST: This trust is created pursuant to an agreement between the donor and his wife entered into prior to their marriage and shall be known as the VIOLA ELLIS TRUST.

SECOND: (a) During the donor's life, the trustee shall pay to or apply for the benefit of the donor's wife, VIOLA ELLIS, such amounts of the net income of the trust property as the trustee from time to time, in its discretion, deems advisable for her care, comfort or support and shall add to principal any income not so distributed.

(b) After the donor's death, the trustee shall pay the net income of the trust property to said VIOLA or, in the trustee's discretion, apply the same for her benefit in the event of her incapacity, legal or otherwise, at least quarterly, during her life.

(c) Upon said VIOLA's death, the trustee shall dispose of both principal and undistributed income of the trust property as then constituted, as follows:

(i)' If issue of the donor shall then be living, the trustee shall divide said trust property into equal shares, one such share for each living child of the donor and one such share for the issue then living of each deceased child of the donor, and shall distribute the same to the trustee of the D. W. ELLIS, JR., 1963 TRUSTS, under an Agreement of Trust dated June 19, 1963, between the donor and DAVID E. PLACE, of Cohasset, Massachusetts, each share to be disposed of as therein provided in respect to the property of the latter trust originally set

aside for the benefit of the donor's child or issue of the donor's deceased child to whom such share pertains.

(ii) If no issue of the donor shall then be living, the trustee shall distribute said trust property, free of trust and by right of representation, to the issue then living of the donor's father, DWIGHT W. ELLIS, late of Springfield, Massachusetts, exclusive, however, of the donor, if he shall then be living.

THIRD: The interests of the beneficiaries hereunder shall not be alienable by them or any of them and shall be free from anticipation, assignment, attachment or pledge and free from control by the creditors, husband or wife of any such beneficiary in any proceedings at law or in equity.

\*     \*     \*     \*     \*     \*     \*

10. VIOLA ELLIS during her lifetime shall have the power to appoint a successor trustee, providing, however, that such successor shall be a bank or trust company located in the United States of America and conducting a fiduciary business. Such successor trustee must have a capital and paid in surplus of at least Ten Million Dollars ($10,000,000.00). Any successor shall have the same powers and duties as though originally named herein.

\*     \*     \*     \*     \*     \*     \*

A trustee may resign at any time by a signed instrument in writing delivered to the donor or, after his death, to the donor's said wife. No trustee shall be liable for the acts or omissions of any other trustee and shall be liable only for its own acts or omissions in bad faith. The trustee shall be entitled to reasonable compensation for its services.

\*     \*     \*     \*     \*     \*     \*

NINTH: The provisions of this instrument shall be interpreted in accordance with the laws of the State of Arizona.

IN WITNESS WHEREOF, DWIGHT W. ELLIS, JR., has hereunto set his hand and seal, as donor, and THE VALLEY NATIONAL BANK OF ARIZONA has hereunto set its hand, as trustee, in token of its acceptance of the trust hereby created, as of the 13th day of September, 1963.

(S)   DWIGHT W. ELLIS, JR.,
            *Donor*

THE VALLEY NATIONAL BANK OF ARIZONA
By  (S)   KENNETH V. TODD,
                              *Trust officer*
                          *Trustee*

Since August 14, 1963, petitioner and Viola have been continually married and there is not pending, nor has there at any time been pending, a legal proceeding concerning a divorce or separation from the marriage. Petitioner has supported Viola at all times during this period. On September 13, 1963, petitioner and Viola were both 49 years of age.

Since September 13, 1963, to the time of trial, the trustee has not made any distributions to Viola.

Petitioner, in his 1963 gift tax return, reported the $200,100 transfer to the trust and reduced it by $19,859.93, thereby reporting gifts to the trust of $180,240.07. Petitioner reported the $19,859.93 reduction as a "portion excludable for consideration or value of right to income of Viola Ellis for such time as she shall survive Dwight W. Ellis, Jr."

The Commissioner disputed this reduction in the gift and determined the deficiency with the following explanation attached to the notice of deficiency:

It has been determined that the $200,100 transferred in trust, under a declaration of trust dated September 13, 1963, is includible in its entirety in the total gifts of Dwight W. Ellis, Jr. for the year 1963, rather than $180,240.07 as reported on the subject donor's Gift Tax Return for 1963.

In his petition to this Court, petitioner pleaded error in the Commissioner's determination and claimed a refund of $19,495.47 as constituting an overpayment of gift tax for the taxable year 1963.

The actuarial value of a remainder interest subject to the life estate of a person aged 49 (the age of Viola at the time of the transfer to the trust) is derived by use of the multiple .46859. Petitioner's refund claim was based on his valuing the remainder interest of the gift at $93,764.86 ($200,100×.46859) and concluding that the interest Viola received in exchange for her marital rights was $106,335.14 ($200,100−$93,764.86). Thus, the amount of the taxable gift would be overreported by $86,475.21.

## OPINION

The sole question for our determination is whether petitioner made a completed gift under section 2511(a)[1] of the Internal Revenue Code of 1954,[2] to the Viola Ellis Trust in 1963 and if so, the amount of the gift. The trust, settled by petitioner, provided that all corpus and accumulated income were to be distributed at Viola's death to one of two groups of individuals none of whom could be petitioner. The parties agree that the gift of the remainder interest in the trust was complete.

The issue then is whether there was a completed gift to the trust of a life estate where the trustee, during the life of the petitioner, had the discretion either to accumulate the trust's income and add it to the corpus of the trust or to distribute it to Viola for her "care, comfort and support."[3]

---

[1] SEC. 2511. TRANSFERS IN GENERAL.

(a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

[2] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.

[3] After petitioner's death, but before Viola's, the trustee was required to pay the net income of the trust property to Viola or in his discretion apply the net income for her benefit in the event of her incapacity at least quarterly during her life. Petitioner has not contended that this interest in the trust was not a completed gift.

Petitioner argues that with respect to this life estate, he retained sufficient control over the disposition of the income, so as to make the gift of this life estate incomplete, thereby absolving him from liability for any gift tax attributable thereto.

Petitioner bases his contentions on the general rule in section 25.2511–2(b), Gift Tax Regs., where—

As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case * * *

The trust provided in part:

SECOND: (a) During the donor's life, the trustee shall pay to or apply for the benefit of the donor's wife, VIOLA ELLIS, such amounts of the net income of the trust property as the trustee from time to time, in its discretion, deems advisable for her care, comfort or support and shall add to principal any income not so distributed.

Petitioner contends the trustee's discretion was limited to an ascertainable standard of "care, comfort or support," thus subjecting the trustee to an enforceable duty under Arizona law. Petitioner contends that the trustee would be required to pay over to Viola the trust's income for her support when she was not adequately maintained by petitioner. Thus, as it was solely within petitioner's power to withhold support and maintenance from Viola, petitioner argues he retained the requisite dominion and control over the disposition of the trust's income to render the transfer incomplete to the extent of the first life estate created therein.

Conversely, the Commissioner asserts that petitioner did not expressly reserve any power or control over the distribution of the income from the trust. The control, i.e., the ability to force the trustee to exercise his discretion and make distributions to Viola, was not the type of control qualifying as a reservation of power under section 25.2511–2(b), Gift Tax Regs.

In short, we do not believe that the dominion petitioner may have been able to exercise over the life estate in the trust was sufficient to cause the gift to be incomplete. Petitioner made no express reservation of a right to alter, amend, or revoke any provisions of the trust. Petitioner was not the trustee but merely *might* have been able to cause a situation to arise wherein the trustee *might* exercise his discretion in favor of Viola. In theory, this may appear to be control, but as a practical matter it would be extremely difficult for petitioner to exercise this "power." For petitioner to cause a situation to occur which would compel the trustee to distribute the trust's income to Viola,

petitioner would have to create a major domestic crisis. Thus, due to the undesirable consequences which would result, we believe it is extremely unlikely that petitioner would or could cut Viola off any time he so desired.

Moreover, petitioner's obligation to support his wife during coverture is firmly established by Arizona law. A breach of this duty would be a violation of the Arizona Revised Statutes, sec. 13-803 (1956).[4] Under these circumstances, petitioner should not be considered to have any control where to exercise the power it would be necessary to do an unlawful act.[5] We find that petitioner failed to retain sufficient dominion over the trust, so as to render the gift to it incomplete.

In light of this conclusion, the next issue is what is the total amount of the taxable gift petitioner made when he settled the trust.

Section 2512[6] sets forth the standard for valuing the gifts taxable under section 2501(a)(1).[7] Generally, only property transferred for "less than an adequate and full consideration in money or money's worth" will be considered a gift, and then only in the amount of the excess.

Petitioner contends that the estates created in favor of Viola[8] were in consideration for her release of her marital rights under the antenuptial agreement. Thus, he asserts that the value of these estates was not taxable as a gift.[9]

In the antenuptial agreement Viola agreed to release any rights "to claim a widow's allowance, dower, homestead, community estate, * * * to waive or contest [petitioner's will] * * * to claim or receive

---

[4] Sec. 13-803. Refusal or neglect to provide for wife; punishment

A husband, having sufficient ability to provide for his wife's support or who is able to earn the means of her support, who refuses or neglects to provide the wife with necessary food, clothing, shelter or medical attendance, unless by her misconduct he was justified in so doing, is guilty of a felony.

[5] It is unclear whether it would be a good defense against his obligation to support Viola for petitioner to contend that Viola has a possible right to the income of a trust which petitioner had settled for her benefit, since the income was to be distributed to her only at the time the trustee chose to exercise his discretion.

[6] SEC. 2512. VALUATION OF GIFTS.

(a) If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

[7] SEC. 2501. IMPOSITION OF TAX.

(a) TAXABLE TRANSFERS.—

(1) GENERAL RULE.—For the calendar year 1955 and each calendar year thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar year by any individual, resident or nonresident.

[8] During the life of petitioner, Viola had a right to distributions of the trust income when the trustee exercised his discretion in her favor. After petitioner's death, Viola had a vested right to the trust income for the remainder of her life.

[9] The parties apparently agree that petitioner's creation of the remainder interest in the trust for the benefit of persons other than petitioner was a taxable gift.

separate support or alimony * * * in any property, separate or community * * * including any accumulations or increases."

The Commissioner's regulations, sec. 25.2512–8, Gift Tax Regs.,[10] clearly indicate that Viola's release of her right to claim a widow's allowance, dower, homestead, and community estate is not to be considered money or money's worth in computing the amount of petitioner's gifts.

The petitioner does not dispute this but argues that the rights of support and maintenance purportedly released by Viola are different and do not fall under this regulation. The Commissioner disagrees and contends that the support and maintenance relinquished by the antenuptial agreement come within the words "other marital rights" in the regulation and are therefore not reducible to a value in "money or money's worth."

In light of the circumstances, it is unnecessary for us to answer this question. Viola did not effectively release any rights (including support and maintenance) when she executed the antenuptial agreement. Under Arizona law this agreement is void as against public policy. See Ariz. Rev. Stat. Ann. sec. 25–201 (1956) ; *Williams* v. *Williams*, 29 Ariz. 538, 243 Pac. 402 (1926) ; *In re Mackevich's Estate*, 93 Ariz. 129, 379 P. 2d 119 (1963). Thus, petitioner did not acquire anything in exchange which would reduce the amount of the gift to the trust.

Accordingly, we find the full amount of the petitioner's gift to the trust was $200,100.

*Decision will be entered for the Commissioner.*

---

[10] Sec. 25.2512–8   Transfers for insufficient consideration. * * * A consideration not reducible to a value in money or money's worth, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift. Similarly, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the spouse's property or estate, shall not be considered to any extent a consideration "in money or money's worth."