YORK v. FERNER, ADM'R

1. **Husband and Wife:** ANTE-NUPTIAL CONTRACT AVOIDED BY WIFE'S DELINQUENCY. Where a woman brought an action against the administrator of her deceased husband to recover an annuity provided in an ante-nuptial contract, and it appeared that she abandoned her husband seven weeks and three days after the marriage, on account of his becoming intoxicated, a habit which he had fully developed and of which she was fully aware when the contract was consummated, *held* that she could not recover, and that her petition was properly dismissed.

*Appeal from Story Circuit Court.*

WEDNESDAY, OCTOBER 18.

ACTION by equitable proceedings to enforce an ante-nuptial contract between plaintiff and her deceased husband, defendant's intestate, and to recover an annuity secured by it. The plaintiff's petition was dismissed by the Circuit Court, and she now appeals to this court.

*J. H. Bradley*, for appellant.

*Dyer & Fitchpatrick*, for appellee.

BECK, J.—I. The ante-nuptial contract, which is the foundation of plaintiff's action, is in the following language:

"Whereas, a marriage is intended and about to be solemnized between John B. York and Susan Mosier, and the said John B. York is possessed of certain personal and real property of the aggregate value of $15,000, consisting of 160 acres of land in Story county, Iowa, a fractional eighty acres in Marshall county, notes secured by real estate mortgage against Harundorf and Bachman, horses, hogs, cattle, etc.

"And whereas, Susan Mosier is possessed of personal and real property of the value of about $800, consisting of half interest in a house and lot in State Center, and team of horses and other personal property.

"Now, in consideration of one dollar each paid to the other,

and the solemnization of the marriage service between the said parties, they each hereby mutually agree that they each hereby relinquish and release to the other all and any rights in and to the property owned by them now separately and severally, forever, and it is further agreed that the property now owned by each of the parties hereto shall descend to the present heirs of said parties, and in no event shall either party hereto demand, receive, or have any interest in and to any part and portion of the property now owned separately and severally by each other.

"It is further agreed that any and all property which may hereafter be owned or accumulated jointly or severally by either of the parties hereto shall be owned in common, and in case of the death or separation of the parties hereto, said property so accumulated after the marriage of the parties hereto shall be divided equally, share and share alike, which in case of death shall go to the lawful heirs of each party hereto.

"And it is further agreed that, in case of the death of the first party hereto before that of the second party hereto, and there should not be any or enough of joint property to support and keep the party of the second part until her death, then in that case the conditions of this agreement shall be so modified as to require the payment out of the property of the said first party the sum of $400 per year during the remainder of the life of said second party."

The petition alleges and the evidence shows excuse for not presenting plaintiff's claim for allowance by the Probate Court within the time prescribed by the statute. As we determine the case upon other points, these matters need not be considered.

The answer avers that plaintiff, after her marriage with intestate, resided with him but seven weeks and three days, and did then desert and abandon him without cause, and, though requested, refused to return to his house and discharge the duties of a wife. It is also alleged that intestate conducted himself as a good and faithful husband. Upon these

grounds defendant claims that plaintiff has forfeited her rights under the contract and is entitled to no relief. Other allegations of the answer, in the view we take of the case, need not be recited.

II.  The evidence shows that plaintiff abandoned the intestate a little more than seven weeks after their marriage, and, though requested to return to him, refused to do so. She alleges that she was justified in this by the drunkenness of the intestate. That he was an inebriate is not denied, and the proof clearly shows that his habits were the same after marriage as before. There is no claim that he became intemperate or drank more after his marriage with plaintiff. No abuse or ill-treatment of plaintiff is alleged or shown, and her only complaint is of his maudlin actions and deportment. She claims, and so testifies, that she did not know he was addicted to drunkenness.

Defendant insists that plaintiff is not competent to testify in this case under Code, section 3639. We will not pass upon the objection to the evidence thus raised for the reason that we think, if her testimony be considered, we cannot find that she was justified in abandoning the intestate. While she testifies that she did not know of intestate's habits before her marriage she positively states that he promised her before marriage, that "he would not drink any more," and that "he would keep sober." His drunkenness seems to have been notorious, and was frequent; her son knew it. It seems incredible that she should have been ignorant of his habits, especially in view of her own testimony that he promised to reform, which she now claims was an inducement to the ante-nuptial contract and her marriage. We have no doubt in our minds that she was fully advised of his habits, and took him for her husband "for better or for worse."

III.  The contract of marriage between a man and a woman always contemplates that the parties shall live together as husband and wife as long as the marriage relations shall exist, subject, of course to such absence from one another or

separation as may be agreed upon or may be justified by the law. But, while the marriage relation exists, each has a right to the society and service of the other, and, if these be refused, the marriage rights and duties are thereby disregarded and violated. But there are causes, which, in law, justify a married man or woman in abandoning his or her spouse. These causes are such as will authorize by divorce the dissolution of the marriage contract. It cannot be claimed that a woman discharges the duties and obligations of a wife who, without cause which in law would authorize a divorce upon her application, lives apart from her husband without his consent. The law in some cases may grant to her the right to live separately from her husband when she is the injured party. But in such a case the law, upon her application, would annul the marriage.

Upon the facts shown in this case, plaintiff was not justified in leaving her husband. The intestste was an inebriate when she married him; she could not have obtained a divorce from him on account of his drunkenness. Code, § 2223, ¶ 4. It is not shown, as we have stated, that she suffered any abuse or ill-treatment from him, or that he neglected to provide for her wants and to discharge the duty of a husband. His manners and habits were those of a drunkard; of this she had information before her marriage. She chose a drunkard for a husband and she ought to discharge the duties of a drunkard's wife. She does not show that her personal safety or even her well-being required her to leave him. She doubtless would have lived more comfortably in the society of a sober man, but she ought to have considered, and doubtless did consider, the discomforts of a drunken husband when she married the intestate.

But she urges that he promised reformation. His failure to keep the promise did not justify her in deserting him. All the world knows that such promises made by a drunken man are always broken. In a few words, she knowingly married a drunkard; she must be content to be a drunkard's wife.

IV. The ante-nuptial contract was based upon the contemplated marriage whereby plaintiff became bound to discharge the duties of a wife. Surely such a contract cannot be enforced by the wife who after the marriage abandons her husband without lawful cause. The consideration of the instrument is the marriage contract; if it be broken and violated, the ante-nuptial contract cannot be enforced. It would be monstrous to hold that a woman could collect an annuity settled upon her by a contract in contemplation of marriage, when after the marriage, without cause, she utterly refused to live with her husband longer than seven weeks and three days. This is the precise case before us. Our conclusions, we think, are supported by legal principles and sound reason. *Jacobs v. Jacobs*, 42 Iowa, 600. In our opinion the judgment of the Circuit Court ought to be

AFFIRMED.