## COHN *v.* COHN

[No. 128, October Term, 1955.]

*Decided April 5, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William A. Gunter* and *Abram C. Joseph,* with whom were *Daniel C. Joseph* and *Gunter & Geppert* on the brief, for the appellant.

*W. Earle Cobey,* with whom were *E. Stuart Bushong* and *Leonard H. Amdursky* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Allegany County granting a divorce *a mensa* to a wife on the ground of desertion, and awarding alimony in the amount of $350.00 per month.

The parties met in Miami, Florida, and were married in Cumberland, Maryland, on May 18, 1951. He was a successful merchant, of Cumberland, fifty-two years of age, divorced from his first wife and with three grown children. She was an impecunious widow from Toronto, Canada, forty-one years of age, with two minor children. At his insistence, the parties executed an antenuptial

agreement prepared by his lawyer a week before the marriage. She did not have counsel "because Mr. Cohn told me he could tear it up any day if we got along well, and it meant very little". He purchased and renovated a large house where they resided for nearly three years. On March 28, 1954, he left the home and has since declined repeated offers of reconciliation. The Chancellor found that the appellant's action was without legal justification, and we agree.

It is unnecessary to review the evidence in detail. Undoubtedly, there were arguments and quarrels. Indeed, he admitted that he was ready to give up the marriage before the honeymoon was over. He complained of her extravagant tastes, although he did all the buying, except for the table. He complained that she argued with him far into the night, but there was evidence that he was himself of a quarrelsome and overbearing disposition. It is settled law that a husband may not with impunity desert even a scolding wife. He was a diabetic, but the medical testimony indicates that his physical condition was no worse after the marriage than it had been before. They lived on a lavish scale, with three servants and much entertaining, but this was in line with his previous style of living. He took her on many business and vacation trips and described himself as a "party drinker". On at least two occasions he came to blows with his guests. The Chancellor found that there was no support for his claim that his leaving was for reasons of health. The Chancellor also found that her efforts at reconciliation were sincere.

The chief contention seems to be that the Chancellor could not properly award alimony in this case, because of the antenuptial agreement. This agreement disclosed his property and business holdings in some detail, reciting that they were of the approximate value of $250,000.00. It is conceded that this estimate was substantially accurate. Paragraph 1. read as follows:

"Fully realizing the seriousness of the step contemplated, the necessary adjustments that

must be made and the possible clash or conflict of temperaments, the parties agree that if, within a period of three years from the date of their marriage, they shall have separated and be living separate and apart each from the other that the sole interest or demand that the second party shall have against the first party or his estate shall be the sum of $5,000.00. Should such a separation occur between the third and fifth year after the marriage of the parties the sole interest or demand of the second party against the first party or his estate shall be the sum of $7,500.00, and that should the parties at any time after the period of five years, due to their inability to live together, live separate and apart each from the other that the sole interest or demand of the second party against the first party or his estate shall be the sum of $10,000.00; and the second party, in consideration of said marriage and intending to be bound hereby, does herewith agree that should the parties be living separate and apart at any time prior to the death of the first party by reason of their inability to live together that she will make no claim or demand against the first party or to any part or share of the real and/or personal estate of which the first party may die seized or possessed except for the sums of money as set forth in this paragraph, to be paid to her by the first party should he be living or out of the estate of the first party, and she hereby waives and relinquishes, in said event, any and all claim to any allowance, alimony, support, dower, widow's award or right in and to the real and personal estate which the first party may have or which he may die seized or possessed of except for the sum above set forth, to which she may be entitled, and she covenants and agrees that upon

> receipt of said sum she will give to the first party, or to his estate, a complete and full release."

Succeeding paragraphs contained a waiver on her part of any claims against his estate, except for the sum of $10,000.00, and an agreement that if he survived her he would pay $10,000.00 to her children, provided the parties were living together at the time of his or her death. We need not now consider whether any of the provisions are valid except paragraph 1. Referring to this, the Chancellor said: "During the trial of the case and in reading the testimony it was clear that the husband's conduct was influenced greatly by the 'Buy Out' provision of the agreement. Believing as he did in the validity of this, he had no hesitation in leaving home and trying to settle for the $5,000.00. Apparently he believed that all that was necessary to relieve himself of all obligations toward his wife was to be ready to offer her $5,000." The Chancellor held the provision invalid as against public policy.

It is a general rule that antenuptial agreements, in contemplation of marriage, are not unlawful. *Levy v. Sherman*, 185 Md. 63, 66. It was held in that case, however, that whether the parties are engaged to marry at the time or not, a confidential relation exists which casts upon each the duty of full disclosure, and the burden of establishing that the arrangement is fair. The fact that the wife had no independent legal advice as to her marital rights was also stressed. In *Ortel v. Gettig*, 207 Md. 594, 608, we declined to hold that the case would be altered if the marriage were one of convenience. In the cases cited the agreements were relied on to bar claims by widows against the estates of deceased husbands, not claims for alimony.

The rule seems to be well established in this country that an antenuptial contract which provides for, facilitates or tends to induce a separation or divorce of the parties after marriage is contrary to public policy, and is therefore void. See *Fricke v. Fricke*, 42 N. W. 2d

500, 502 (Wisc.); *Fincham v. Fincham*, 165 P. 2d 209, 213, 217 (Kan.); *Stratton v. Wilson*, 185 S. W. 522 (Ky). See also *Williston, Contracts* (Rev. ed.), § 1742, and *Restatement, Contracts*, § 584, Ill. 2. Many cases in accord are cited in a note in 70 A. L. R. 826. In *Hilbert v. Hilbert*, 168 Md. 364, 375, in reference to a mutual waiver of claims for alimony in an antenuptial agreement, it was noted, although the point was not contested, that "such contracts are held to be void as against public policy". The statement is in accord with the great weight of authority. The courts distinguish between agreements that have a natural tendency to induce separations, and those that represent a fair and reasonable compromise, after a separation has occurred or where one is in immediate contemplation. The case of *Walker v. Walker*, 125 Md. 649, is distinguishable. It was there held that a failure of the husband to comply with the terms of an antenuptial agreement barred his reliance on the agreement as against a claim for alimony. It was unnecessary to consider the validity of the agreement and the Court did not do so.

The appellant relies strongly upon the case of *Harrison v. Harrison*, 160 Md. 378, 384. In that case, in dealing with a postnuptial separation agreement, it was said that "To the extent to which the agreement might be susceptible of interpretation as an encouragement to a divorce, it is subject to the court's disapproval." It was held, however, that the husband could not recover the fund set aside under the agreement, since "In denouncing it as against public policy he condemns his own act of participation." In *Cronin v. Hebditch*, 195 Md. 607, 615, it was said that neither the *Harrison* case, nor the statute enacted by ch. 220, Acts of 1931, Code (1951), Art. 16, sec. 37, changed the pre-existing law as to postnuptial settlement agreements. It may be doubted whether the statute, which refers to agreements "between husband and wife", is applicable to prenuptial agreements. In any event, this Court rested the decision in the *Cronin* case upon the ground that

the "entire agreement, however, is a palpably unlawful agreement to obtain a divorce and to pay $9,000 for it, $1,000 c.o.d., the balance in ten annual deferred payments." The agreement was entered into after the separation had occurred, and hence could not have been a contributing cause. It was also said that the agreement showed "on its face that it is without consideration and is unjust and inequitable." In *Frank v. Frank*, 203 Md. 361, 370, it was held that a postnuptial separation agreement involving a waiver of alimony was unjust and inequitable, even though a consideration might be spelled out by reason of certain provisions for payment of support and medical expenses of children. It was noted that there are cases holding that such covenants may be independent and severable.

In the instant case the wife did not accept the husband's tender of $5,000.00. The amount tendered was, of course, far less than she might reasonably expect to receive by way of an alimony award. To this extent the bargain was improvident if not unfair. The schedule of payments, graduated according to years of cohabitation, suggests severance pay rather than a *bona fide* adjustment of the rights of property and support.

In any event, we think the Chancellor was correct in finding that the agreement in lieu of alimony was in fact an inducement to the husband's desertion. Mrs. Cohn testified "every time we would have an argument he would say he had this agreement and he is leaving me and how smart he was to make it." Mr. Cohn, in reply to a question whether he felt he could "leave and pay off * * * at any time", testified: "I felt it was equal for both parties, that if she wanted to leave me she could, and if I wanted to leave her I could." It is not without significance that he left just before the time when the stipulated price would advance, under the agreement, from $5,000.00 to $7,500.00. We think the agreement is invalid, at least as a bar to her claim for alimony. The State has a legitimate interest in the preservation of the marital relation and the fulfillment of obligations

incident to the marriage status. The case of *Pattee v. Riggs National Bank of Washington, D. C.*, 124 F. Supp. 552, 554 (aff. 218 F. 2d 867), relied on by the appellant, is not to the contrary. There a provision in a will of the wife's mother provided for the payment of income only, unless the daughter should be divorced, in which case she would receive the principal. The court held that the effect of the condition was not to induce a divorce but to provide for the daughter's support in that contingency. It recognized, however, that the provision might have been invalid if it had had the design and effect of inducing a divorce.

The appellant contends that the alimony award was excessive. The Chancellor in a supplemental opinion carefully considered the present financial worth of the husband and found that his average income over the previous four years was $15,000.00 a year. After taking exemptions for the appellee and her two children in 1954, the appellant still had a net income after taxes of $18,500.00 She must, of course, pay income taxes on what she receives. The Chancellor also considered their scale of living, and the fact that she had lived more modestly prior to the marriage. We cannot find that he abused his discretion or that the award was clearly excessive under the circumstances. The award is always subject to change if the circumstances, needs and pecuniary condition of the parties change. *Brown v. Brown*, 204 Md. 197.

*Decree affirmed, with costs.*