Harold L. NORRIS, Appellant,

v.

Lenora M. NORRIS, Appellee.

No. 53559.

Supreme Court of Iowa.

Feb. 10, 1970.

D. W. Harris, Bloomfield, for appellant.

Gilbert, Stoddard & Anderson, Oskaloosa, for appellee.

STUART, Justice.

Plaintiff, 64, and defendant, 67, entered into an antenuptial contract in contemplation of plaintiff's third marriage and defendant's second marriage. Both parties had living children by the previous marriages. The contract provided for plaintiff to pay the expenses of the home and support defendant. Defendant agreed to perform the wifely duties. Each waived all dower rights in the other's property and agreed to sign all papers necessary to convey any property. Plaintiff agreed to place a $1000 bond in joint ownership each year for the first five years after the marriage. The term of the contract in question here provided:

"FIFTH: This contract is made on the assumption, on the part of both parties, that their life together, after marriage will be happy and congenial and free from any domestic discord, but should any discord arise involving court proceedings, neither party shall have the right to claim anything of the other's property under this contract, but the property rights of the parties shall stand just as they were before the marriage occurred."

Plaintiff was not happy with the marriage and after about four years he commenced an action for divorce in January 1966. Defendant was enjoined from entering upon the premises occupied by her husband which had been their home. The trial court denied the divorce in January 1967 on the ground that plaintiff had failed to establish cruel and inhuman treatment on the part of the wife which endangered his life. They continued to live apart and had very little communication thereafter. Plaintiff supported defendant until the divorce was denied. He has not supported her since.

The husband brought this declaratory judgment action to secure his wife's signature to deeds of some property he was transferring. She countered with a petition for separate maintenance on the ground of desertion. Plaintiff replied that the fifth paragraph of the antenuptial contract prevented defendant from claiming any right to support and maintenance. He does not claim he is entitled to individual ownership of the bonds.

The trial court held the fifth paragraph of the antenuptial contract void as against public policy, enjoined plaintiff from altering the registration to the $5000 bonds during defendant's lifetime and required him to pay defendant $120 per month support and awarded her judgment for $1800 back support, $765 for medical expenses and attorneys fees and costs, and established a lien against plaintiff's property for the commuted value of the future payments based on the wife's life expectancy. He required her to execute the necessary deeds and instruments to transfer the husband's property.

Two issues confront us here. (1) Is paragraph five of the antenuptial agreement contrary to public policy? (2) Is the evidence sufficient to justify the granting of a decree of separate maintenance?

Although it might have been argued the terms of the antenuptial contract do not bar an award of alimony. Sanders v. Sanders (1955), 40 Tenn.App. 20, 288 S.W.2d 473, 57 A.L.R.2d 932, 940, appellee filed no brief and argument, and we therefore decide the case on the assumption that the contract provides the wife shall received no alimony in the event of marital discord.

I. As a general rule antenuptial contracts are favored in the law and should be construed liberally to carry out the intention of the parties. The courts will uphold them if they are fair between the parties and fairly, freely and understandingly entered into. Peet v. Monger (1953), 244 Iowa 247, 254, 56 N.W.2d 589, 593; In Re Onstot's Estate, (1938), 224 Iowa 520, 526, 277 N.W. 563, 566. There is no claim here that defendant did not understand fully the terms of the contract.

However, the authorities are in general accord that provisions similar to this one

are void as against public policy. Williams v. Williams (1926), 29 Ariz. 538, 243 P. 402; Watson v. Watson (1906), 37 Ind. App. 548, 77 N.E. 355; Neddo v. Neddo (1896), 56 Kan. 507, 44 P. 1; Lindsay v. Lindsay (1964, Fla.App.), 163 So.2d 336, 338–339; Cohn v. Cohn (1956), 209 Md. 470, 121 A.2d 704, 706; In Re Appleby's Estate (1907), 100 Minn. 408, 111 N.W. 305, 310, 10 L.R.A.,N.S., 590; Motley v. Motley (1961), 255 N.C. 190, 120 S.E.2d 422, 424; Sanders v. Sanders (1955), 40 Tenn.App. 20, 288 S.W.2d 473, 57 A.L.R.2d 932, 939; Werlein v. Werlein (1965), 27 Wis.2d 237, 133 N.W.2d 820, 822; Caldwell v. Caldwell (1958), 5 Wis.2d 146, 92 N.W.2d 356, 361; Fricke v. Fricke (1950), 257 Wis. 124, 42 N.W.2d 500, 502; Restatement, Contracts, Section 584(1), Illustration 2, page 945; 24 Am.Jur.2d 187, Divorce and Separation, § 12; 57 A.L.R.2d 942.

The Iowa Supreme Court has not passed upon this question but dictum in Kalsem v. Froland (1928), 207 Iowa 994, 999, 222 N.W. 3, indicates we would follow the general rule.

■ The reason most frequently given is that the state's interest in preserving the marriage relationship makes any provision which provides for, facilitates or tends to induce a separation or divorce of the parties after marriage contrary to public policy and void. Neddo v. Neddo, supra; Cohn v. Cohn, supra; In Re Appleby's Estate, supra; Fricke v. Fricke, supra; Restatement, Contracts, § 584, page 1095; 24 Am. Jur.2d 187, Divorce and Separation, § 12; 57 A.L.R.2d 942, 943.

It is also against public policy to place an innocent party in a position where he or she would be forced to endure conduct which would constitute grounds for divorce because of fear that the commencement of an action for divorce would deprive the person of contracted property rights and means of support. Sanders v. Sanders,

■ Public policy has declared that certain obligations attach to a marriage contract including the duty of the husband to support his wife. It is against the public interest to permit the parties to enter into an antenuptial agreement relieving him of this duty. Cohn v. Cohn, supra; Lindsay v. Lindsay, supra; Motley v. Motley, supra; Werlein v. Werlein, supra; Caldwell v. Caldwell, supra; Fricke v. Fricke, supra; Ryan v. Dockery (1908), 134 Wis. 431, 434, 114 N.W. 820, 821, 15 L.R.A.,N.S., 491, 126 Am.St.Rep. 1025.

Under our present system for granting divorces it would seem the decision as to the amount of support should remain in the courts.

Plaintiff cites several cases, but none give him direct support. In French v. French (1945), 70 Cal.App.2d 755, 161 P.2d 687, the wife received a life interest in certain real estate in an antenuptial contract. The contract also provided if divorce or separation occurred the life estate was void. She argued she was compelled to leave the home because of the husband's cruel and inhuman treatment. The California court held the record was not sufficient to support this claim and left this factual question for determination at a later trial without passing on the soundness of the legal argument.

Sanders v. Sanders (1955), 40 Tenn.App. 20, 288 S.W.2d 473, 478, 57 A.L.R.2d 932, 940, supports this opinion. The court said: "If the forfeiture clause in the contract could have the effect stated, [cause the innocent party to forfeit right to alimony regardless of the conduct of the other party] we would agree that same contravened public policy; * * *." The court then held that particular provision did not bar a wife from bringing a good faith action for divorce. It held she could recover property and alimony, if successful, but would not forfeit the property rights awarded in the antenuptial agreement if unsuccessful.

In Re Cole's Estate (1922), 85 Okl. 69, 205 P. 172, does not involve this provision. No separation occurred. The wife lived

with the husband all her life. The property settlement was challenged by her heirs.

In Talley v. Harris (1947), 199 Okl. 47, 182 P.2d 765, wife sought to renounce will of husband and terms of antenuptial agreement and elect to take as heir. The provision involved here was not an issue there.

The result reached in Hudson v. Hudson (1960), Okl., 350 P.2d 596, is contrary to the result reached here, but was decided on the general rule that a just and reasonable antenuptial contract will be upheld. There was no rejection of the public policy argument advanced here.

In Clark v. Clark (1949), 201 Okl. 134, 202 P.2d 990, 992, the wife determined to be the guilty party in a divorce action sought to require husband to furnish her a home after the divorce contrary to the antenuptial agreement. The court said: "Under the terms of the antenuptial agreement the right of defendant to a home at expense of plaintiff was expressly limited to the period of their married life and it is therein further provided that if defendant does not remain a good and true and faithful wife or separates from plaintiff she is to have no property other than that owned by her at time of the agreement. In view of the terms thereof and the divorce decree, which determines the fact of defendant's gross neglect of duty, there is no basis for the alleged right to a home after the separation."

■ It must be remembered that under the court's decision in the husband's divorce action, the separation brought about by the injunctive order and continued thereafter at husband's insistence was without just cause. The wife is therefore an innocent party, who, if the provision of the antenuptial contract were enforced, would be deprived of the right to separate maintenance because the husband refused to live with her. We believe the facts here bring this case within the rules announced and hold the provision contained in the antenuptial agreement void as contrary to public policy.

In York v. Ferner (1882), 59 Iowa 487, 491, 13 N.W. 630, a wife who deserted her husband after seven weeks without just cause sought to enforce an antenuptial contract which gave her an annuity. Although the facts are different, the words of the court there can be paraphrased to apply to this case.

"The antenuptial contract was based upon the contemplated marriage whereby plaintiff became bound to discharge the duties of a [husband]. Surely such a contract cannot be enforced by the [husband] who after the marriage abandons [his wife] without lawful cause. The consideration of the instrument is the marriage contract; if it be broken and violated, the antenuptial contract cannot be enforced. It would be monstrous to hold that a woman [could be deprived of the right to alimony] when after marriage, without cause [her husband refused to live with her]."

II. Husband claims there was not sufficient evidence to justify the granting of a decree of separate maintenance to the wife on the ground of desertion. We do not agree.

"Separate maintenance is not a statutory action as is divorce. It is well settled, however, that as a general rule a decree for separate maintenance will not be granted to a wife unless the husband's conduct has been such as to justify a divorce. There is an exception to this general rule where a husband deserts or abandons his wife without just cause. He may be compelled to furnish support even though the full two year period necessary to procure a divorce has not elapsed. The reason for such an exception is obvious." Keefe v. Keefe (1966), 259 Iowa 85, 87–88, 143 N.W.2d 335, 336; Peters v. Peters (1957), 249 Iowa 110, 114–115, 86 N.W.2d 206, 208–209; Avery v. Avery (1945), 236 Iowa 9, 11–12, 17 N.W.2d 820, 822; Brown v. Brown (1943), 232 Iowa 1265, 1267–1268, 8 N.W.2d 414, 416; Russell v. Russell (1911), 150 Iowa 137, 140–141, 129 N.W. 835.

The record is clear the wife was forced from their home by a restraining order when plaintiff filed his action for a divorce. They have not lived together since. The husband will not live with her. He gave her forty dollars a week until the divorce was denied. He has not supported her since that time and has paid no bills for her since he filed the divorce action. The denial of the divorce is conclusive of the fact that the separation was without just cause. The evidence established the wife's needs and the husband's ability to pay. The decree of separate maintenance was clearly justified on this record under the authorities referred to above.

The husband cites only the case of Eckles v. Eckles (1942), 231 Iowa 1302, 4 N.W.2d 658. There *husband* was denied a decree of separate maintenance sought on the ground of *wife's cruel and inhuman treatment*. The cases are in no way comparable.

For the reasons stated, the trial court is affirmed.

Affirmed.

All Justices concur except REES, J., who takes no part.