358 So.2d 618 (1978)
Vertie L. HOLLIDAY
v.
Andrew S. HOLLIDAY.
No. 60298.
Supreme Court of Louisiana.
April 10, 1978.
Dissenting Opinion May 31, 1978.
Thomas & Dunahoe, Edwin Dunahoe, Natchitoches, for plaintiff-applicant.
Russell E. Gahagan, Gahagan & Gahagan, Natchitoches, for defendant-respondent.
MARCUS, Justice.
On April 26, 1963, plaintiff, Vertie Eagles, nee Leeper, and defendant, Andrew S. Holliday, entered into an antenuptial agreement *619 in which they stipulated that there would be no community of acquets and gains during the existence of their contemplated marriage, choosing instead to remain separate in property. The parties further agreed that plaintiff waived and relinquished "any and all rights or claims which she might have to claim or collect sustenance, alimony, support, maintenance or funds for any reason from the said Andrew Sampson Holliday . . . in the event a judicial separation or divorce is obtained by either of the parties hereto." Thereafter, on May 2, 1963, the parties were married.
On June 25, 1976, plaintiff instituted this action against defendant seeking a separation from bed and board on the ground of cruel treatment and custody of the minor children of the marriage. Additionally, plaintiff sought alimony pendente lite in the sum of $800 per month and child support in like amount. Defendant filed an answer denying the allegations of plaintiff's petition and pleading as a bar to plaintiff's right to alimony pendente lite the antenuptial agreement executed by the parties. He further reconvened seeking a separation in his favor on the ground of cruel treatment and custody of the minor children of the marriage. After trial on the merits, judgment was rendered in favor of plaintiff awarding her a separation from bed and board and rejecting defendant's reconventional demand. Defendant was ordered to pay to plaintiff alimony pendente lite in the sum of $400 per month and child support for a minor child of the marriage in the amount of $50 per week.
Defendant appealed only that portion of the district court's judgment which awarded to plaintiff alimony pendente lite. The court of appeal concluded that the provision of the antenuptial agreement in which plaintiff waived her right to alimony pendente lite in the event of a judicial separation was a valid and binding agreement and was not against public policy. Hence, it barred plaintiff's right to alimony pendente lite. Accordingly, the court amended the lower court's judgment so as to delete therefrom the award of alimony pendente lite to plaintiff.[1] We granted plaintiff's application for certiorari to review the correctness of this decision.[2]
With respect to antenuptial agreements, La.Civil Code art. 2325 provides:
In relation to property, the law only regulates the conjugal association, in default of particular agreements, which the parties are at liberty to stipulate as they please, provided they be not contrary to good morals,[[3]] and under the modifications hereafter prescribed.
Pursuant to this provision, an antenuptial agreement is valid provided that it is not contrary to good morals or to public policy.
The sole issue presented for our determination is whether the provision of the antenuptial agreement in which plaintiff waived her right to alimony pendente lite in the event of a judicial separation from bed and board is null and void as against public policy.
Although, under La.Civil Code art. 86, marriage is designated as a civil contract, it is more than a contract. The law prescribes the manner of contracting and celebrating marriages, the legal effects and consequences of marriage, and the manner in which marriages may be dissolved. La. Civil Code art. 87. Hence, marriage is a relationship established according to law and it is the policy of the state to maintain it. In the public interest, the state has deemed it essential that certain rights and duties should attach to this relationship among which is the husband's obligation to support his wife during the existence of the marriage. With regard to this duty, La. Civil Code arts. 119 and 120 provide:
Art. 119:
The husband and wife owe to each other mutually, fidelity, support and assistance.
Art. 120:

*620 The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition. (Emphasis added.)
Although a judgment of separation from bed and board terminates the spouses' conjugal cohabitation and their community of acquets and gains, where one exists, it does not dissolve the marriage itself nor does it extinguish the obligation of fidelity and duty of support and assistance provided for in La.Civil Code arts. 119 and 120 which terminate only upon dissolution of the marriage by death or divorce. Boucvalt v. Boucvalt, 235 La. 421, 104 So.2d 157 (1958); Hillard v. Hillard, 225 La. 507, 73 So.2d 442 (1954); Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950). La.Civil Code art. 148[4] is the authority for the courts to allow alimony pendente lite. The right of the wife to seek alimony pendente lite does not depend at all upon the merits of the suit for separation from bed and board, or for divorce, or upon the actual or prospective outcome of the suit. The reason for this is that an order to pay alimony pendente lite is merely an enforcement of the obligation of the husband to support his wife as it exists under La.Civil Code art. 120, which continues during the pendency of a suit for separation from bed and board or for divorce and does not terminate until the marriage is dissolved either by death or by divorce. Murphy v. Murphy, 229 La. 849, 87 So.2d 4 (1956); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Hillard v. Hillard, supra; Eals v. Swan, 221 La. 329, 59 So.2d 409 (1952).
It is the public policy of this state as expressed in the provisions of La.Civil Code arts. 119, 120 and 148 that a husband should support and assist his wife during the existence of the marriage. It is against the public interest to permit the parties to enter into an antenuptial agreement relieving him of this duty imposed by law.[5] The policy involved is that conditions which affect entitlement to alimony pendente lite cannot be accurately foreseen at the time antenuptial agreements are entered, and the public interest in enforcement of the legal obligation to support overrides the premarital anticipatory waiver of alimony.
We, therefore, conclude that the provision of the antenuptial agreement in which plaintiff-wife waived her right to alimony pendente lite in the event of a judicial separation from bed and board is null and void as against public policy.[6] Hence, the court of appeal erred in recognizing the validity of the waiver as a bar to plaintiff's right to alimony pendente lite.
Since we are unable to ascertain from the record before us whether defendant raised in the alternative the issue of the excessiveness of the alimony award in his appeal to the court of appeal, we must remand the case to that court for further proceedings.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to that court for further proceedings consistent with the views herein expressed. The costs in this court are assessed against defendant, Andrew S. Holliday.
*621 CALOGERO, J., dissents and assigns reasons.
SUMMERS, J., dissents and will assign reasons.
CALOGERO, Justice, dissenting.
I would affirm the judgment of the Court of Appeal. As correctly stated by the majority the precise legal issue presented here is whether a waiver of alimony pendente lite by a wife in a prenuptial contract is an agreement against public policy and thereby null and void.
Initially two pertinent factors should be emphasized:
a) the contract under consideration was entered into prior to marriage, i. e. before the parties were contractually incapacitated by their marital status;[1] and
(b) the only alimony at issue is alimony pendente lite under La.Civil Code article 148.
As there is no question of the capacity of the parties to enter this contract our attention is focused on the contract's subject matter. Article 2325 of the Civil Code provides that the parties are free to stipulate as they please in antenuptial contracts as long as their stipulations are not against good morals or certain express prohibitions. The stipulations expressly prohibited by our Civil Code do not include that found in the present contract. The Court of Appeal in its discussion of those provisions which are specifically prohibited in antenuptial contracts, stated:
"LSA-C.C. Article 2326 provides that an antenuptial contract cannot alter the order of inheritance by the children or posterity of the parties. Article 2327 provides that such a contract cannot derogate from the power of the husband over his wife and children. Article 2392 expressly provides that the parties may stipulate that there shall be no community of acquets and gains. Article 2395 provides that where the parties agree that they shall be separate in property, each contributes to the expenses of the marriage in the manner agreed to in their contract, or, if there be no agreement in the contract, the wife contributes one-half of the expenses of the marriage."[2]
Therefore, if the agreement waiving alimony pendente lite is null and void it can only be so if it is "contrary to good morals"[3] or if it is an attempt to "derogate from the force of laws made for the preservation of public order or good morals."[4] *622 But if a stipulation is neither expressly or impliedly prohibited nor contrary to the public good then a party may renounce those rights which the law has established in his (or her) favor.[5]
In support of relator's contention that the contractual stipulation in question is against public order, public good and/or good morals, relator in brief relies upon Civil Code Article 119 which provides:
"The husband and wife owe to each other mutually, fidelity, support and assistance."
Relator additionally cites the appellate court decision in Favrot v. Barnes, 332 So.2d 873 (La.App. 4th Cir. 1976) wherein the court questioned the ability of spouses to "repeal or amend" the mutual marital obligations established by Article 119.
I disagree with relator's contentions and the majority's resolution of the issue. Alimony pendente lite is not one of the "mutual" duties of support contemplated by Civil Code Article 119. Nor is alimony pendente lite the type of support which under Article 120 a husband owes to a wife who lives with him "wherever he chooses to reside." Prompting my conclusion in this regard is Williams v. Williams, 331 So.2d 438 (La. 1976). In that case a divided court, with Justice Marcus writing for the majority, found Article 148 to be constitutional notwithstanding denial of equal protection contentions stemming from Article 148's providing alimony pendente lite for the wife and not the husband. The reasoning behind the decision in Williams was that alimony pendente lite was intended to protect the wife during a period when she has no control over community property due to the husband's status as head and master. Since alimony pendente lite is not reciprocal, it should be evident that it is not embodied in Article 119's obligation of "mutual" support.
Neither am I persuaded by relator's contention and the majority's inference that alimony pendente lite is, in the public interest, essential to avoid a wife's becoming a social burden and/or ward of the state. This attitude is a demeaning one which is inconsistent with the realities of the day. It is simply not correct to assume that all, or most, women are incapable of financial independence but must, instead, be wholly dependent upon either their husbands or the state.
Furthermore, in this case, as in almost all marriages where the spouses have entered into an antenuptial agreement, there is no community of acquets and gains. The wife thus has the same control over her property between separation and divorce as she had prior to separation and prior to marriage. An antenuptial waiver by the wife of alimony pendente lite would make the wife no more of a burden on the state than she was prior to marriage. I therefore view alimony pendente lite as a right which is provided for the benefit of the individual and not for the protection of public order and good morals.
Of paramount importance in what would be my resolution to this legal issue is the freedom of parties to contract, which is essential to both our society and system of government. Planiol states in Chapter III of his Treatise on the Civil Law, entitled "Of the Freedom of Juridical Acts," section 288:

*623 "Here is an outstanding rule of law which is nowhere written in formal terms. Its existence is, however, certain. It runs: all that is not prohibited by law is permitted. Freedom is the rule. Private will is autonomous, with due regard to the limits fixed by law."
In our jurisprudence the issue appears to be res nova. No prior case until now has conclusively resolved the issue although it has been raised on several occasions.[6]
Respondent urges reliance upon the case of Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967) for the result which I espouse here. He contends that that case held a waiver of alimony pendente lite by a wife to be substantively valid. I would find it unnecessary to rely on that decision but would conclude for the reasons I have expressed hereinabove that the waiver of alimony pendente lite by relator-wife was a valid and enforceable element of the antenuptial agreement between Vertie and Andrew Holliday.[7]
Therefore, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice CALOGERO.
NOTES
[1] 346 So.2d 1382 (La.App. 3d Cir. 1977).
[2] 350 So.2d 678 (La.1977).
[3] See also La.Civil Code arts. 11, 1892, 1895 and 2031.
[4] La.Civil Code art. 148 provides:

If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband.
[5] The great weight of authority is in general accord. Williams v. Williams, 29 Ariz. 538, 243 P. 402 (1926); Eule v. Eule, 24 Ill.App.3d 83, 320 N.E.2d 506 (1974); In re Marriage of Gudenkauf, 204 N.W.2d 586 (Iowa 1973); Norris v. Norris, 174 N.W.2d 368 (Iowa 1970); Cohn v. Cohn, 209 Md. 470, 121 A.2d 704 (1956); Motley v. Motley, 255 N.C. 190, 120 S.E.2d 422 (1961); Caldwell v. Caldwell, 5 Wis.2d 146, 92 N.W.2d 356 (1958).
[6] We express no opinion at this time regarding the validity of the clause in respect to its attempt to waive permanent alimony. This issue is not before us.
[1] The general incapacity to contract between spouses is provided in C.C. art. 1790. It provides:

"Besides the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as a husband and wife, tutor and ward, whose contracts with each other are forbidden; or in relation to the subject of the contract, such as purchases, by the administrator, of any part of the estate which is committed to his charge, and the incapacity of the wife, even with the assent of the husband, to alienate her dotal property, or to become security for his debts. These take place only in the cases specially provided by law, under different titles of this Code."
The exception to this general incapacity is provided by C.C. art. 2446. It provides:
"A contract sale, between husband and wife, can take place only in the three following cases:
1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights.
2. When the transfer made by the husband to his wife, even though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated.
3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry.
Saving, in these three cases, to the heirs of the contracting parties, their rights, if there exist any indirect advantage."
[2] 346 So.2d at 1384.
[3] C.C. art. 1790.
[4] Civil Code Article 11 provides in pertinent part:

"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals."
Other Civil Code articles relative to prohibited conditions are:
Art. 12. "Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
Art. 19. "When to prevent fraud, or from any other motives of public good, the law declares certain acts void, its provisions are not to be dispensed with on the ground that the particular act in question has been proved not to be fraudulent, or not to be contrary to the public good."
Article 1892. "That is considered as morally impossible, which is forbidden by law, or contrary to morals. All contracts having such an object are void."
Art. 1895. "The cause is unlawful, when it is forbidden by law, when it is contra bonos mores (contrary to moral conduct) or to public order."
Art. 2031. "Every condition of a thing impossible, or contra bonos mores (repugnant to moral conduct) or prohibited by law, is null, and renders void the agreement which depends on it."
[5] C.C. art. 11 concludes:

"But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
[6] In Sheard v. Green, 219 La. 199, 52 So.2d 714 (1951) and Russo v. Russo, 280 La. 17, 22 So.2d 671 (1945) this Court was confronted with contracts containing similar waivers of alimony. The character of such, however, was neither expressly or impliedly decided in those cases as various reasons prevented the Court from reaching the issue. See dissent by Judge Landry in the First Circuit's decision in Nelson v. Walker, 189 So.2d 54 (La.App. 1st Cir. 1966).
[7] While the language of the Court in Nelson touched on considerations of public order and seemingly held the waiver of alimony pendente lite substantively valid, a studey of the decision indicates that the language was in reference to the character of the nullity (absolute or relative) affecting the interspousal contract entered into during the marriage, a period of contractual incapacity for the parties. Any discussion of the substantive validity of a waiver of alimony pendente lite was not central to the holding but was obiter dictum.