IN RE Evelyn Marie TERRILL, Petitioner,

v.

William Henry TERRILL, Respondent.

Evelyn Marie TERRILL, Appellant,

v.

Merle W. TERRILL and Thelma A. Terrill, Respondents.

Court of Appeals

*No. 79–855. Submitted on briefs February 6, 1980.—
Decided July 24, 1980.*
(Also reported in 295 N.W.2d 809.)

For the appellant the cause was submitted on the briefs of *Schmitz, Beer & Blum* of Monroe.

For the respondents the cause was submitted on the brief of *Hamilton & Mueller, S.C.* of Dodgeville.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. Evelyn Terrill appeals from an interlocutory judgment of the Iowa County Circuit Court denying her petition to void a clause of a land contract which requires reconveyance to the vendor if she and her husband become divorced.

Evelyn and William Terrill were married on July 23, 1970, and have one son. Evelyn also has three children

by a prior marriage whom William has adopted. William was married and divorced previously but has no other children.

The couple operated William's parents' farm as tenants from 1967 until William purchased it on land contract in March of 1975. During this time, William and his parents discussed the sale of the farm, and both expected the sale to occur when Merle and Thelma retired. The farm has been in the Terrill family for· four generations, and Merle and Thelma wanted to ensure that it would remain so. Merle and Thelma have two other children, but those children have not lived on the farm since becoming adults.

William's parents were reluctant to sell the farm to him because of his history of alcoholism, and because they were concerned that he might again become divorced. Evelyn had filed a divorce action against William in 1974, but the couple had reconciled and the action was dismissed.

Merle and Thelma eventually agreed to sell the farm to William in a manner which would ensure that the farm would remain in the Terrill family. They sold it by land contract dated March 1, 1975, for $98,000, although the fair market value of the farm was then approximately $286,000. No gift tax return was filed. William agreed to pay his parents 30 percent of the gross annual farm income which was to be applied to the purchase price after the interest was deducted. The land contract included a clause which provided that if William died or became divorced within 10 years of the execution of the contract, Merle and Thelma had the option to repurchase the farm by returning the principal payments to William.

Upon Evelyn's insistence, the provision regarding William's death was amended on September 8, 1975, to allow her and the couple's children to retain the farm if Wil-

liam died within 10 years of the agreement. It is disputed as to whether Evelyn also objected to the divorce provision. The amended land contract contained a paragraph signed by Evelyn in which she agreed that if she and William were divorced, she forfeited all interest she might have in the property except for any principal paid, which would be returned to William.[1]

The disputed paragraphs in the amended land contract read:

> In the event the Purchaser shall die or become divorced or separated by judicial decree from Evelyn Terrill within 10 years from March 1, 1975 and during the lifetime of either of the Vendors, the Vendors or the survivor of them shall then have the privilege of purchasing and reacquiring title to the premises above described by refunding to the Purchaser or his personal representative the amount of principal paid to the Vendors pursuant to the contract. However, in the event of the death of the Purchaser within 10 years from March 1, 1975 while the Purchaser retains his interest as Purchaser under this contract and while either of the Vendors continues to live, the right of the Vendors or the survivor of them to purchase and reacquire title to the premises by refunding to the personal representative of the estate of the Purchaser the amount of principal paid on this contract shall not be exercised while Evelyn Terrill, the children of the Purchaser and Evelyn Terrill or any child of Purchaser and Evelyn Terrill or any combination of them conduct a farming operation in a good and husbandlike manner on the said premises.
>
> . . . .
>
> In consideration of Merle W. Terrill and Thelma M. Terrill having entered into this amended contract, Evelyn Terrill, wife of William H. Terrill, approves said amended land contract and all the terms and conditions therein contained, agrees to be bound thereby and irrevocably agrees that if the said Purchaser shall become

---

[1] The original land contract dated March 1, 1975, also contained this provision, though it also provided for a like forfeiture if William died within 10 years.

divorced or legally separated within 10 years from March 1, 1975 to promptly convey to Vendors, their heirs and assigns, all of her interest in said contract and the lands described therein upon the compliance by the Vendors with the refunding of the portion of the purchase price representing principal which has been paid to them.

In December of 1977, William became intoxicated and broke Evelyn's jaw. Evelyn filed this petition for divorce from William on February 8, 1978. She amended the petition in August of 1978, by adding Merle and Thelma as defendants. The amended petition requested a declaratory judgment voiding the contested clauses of the amended land contract.

The trial court granted Evelyn a divorce, reserved all questions regarding a property division, child custody, support and maintenance pending an appeal to this court, and denied Evelyn's petition to void the clauses of the land contract with respect to divorce and repurchase.

On appeal Evelyn claims that:

(1) The clauses relating to divorce and repurchase are void as a violation of public policy;

(2) The clauses are inequitable within the meaning of sec. 767.255(1), Stats., which governs marriage contracts disposing of property; and,

(3) The court may sever invalid provisions of the land contract and enforce the remaining valid portions.

(1) *Clauses in Violation of Public Policy*

Evelyn claims that the contract clauses relating to divorce and repurchase violate public policy because:

(a) They induce instability in marriage contrary to the public policy reflected in sec. 765.001(2), Stats;

(b) They cause an inequitable economic result;

(c) They force Evelyn to endure an intolerable marriage in order to obtain the contract's benefits; and,

(d) Evelyn's consent to the provisions was obtained under pressure.

Section 765.001(2), Stats., provides:

It is the intent of Chs. 765 to 768 to promote the stability and best interests of marriage and the family. Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. . . . The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned.

Evelyn claims that the contract is contrary to the policy described in sec. 765.001(2), Stats., because it encourages William to obtain a divorce so as to have the property revert to his parents and put himself in a position of reacquiring the property free of claims by Evelyn.

This land contract is not an antenuptial agreement. For an example of an antenuptial agreement *see Fricke v. Fricke,* 257 Wis. 124, 42 N.W.2d 500 (1950). The clause does not violate the policy considerations in *Fricke.*

The contract does not encourage William to cause a divorce. Under the salient clauses William loses all interest in the property if it is repurchased by his parents. As his parents have two other children, it is uncertain whether he would ever again obtain an interest in the farm.

Transfers will be voided if they are intended "to escape or minimize the division of property in favor of the wife in case of divorce," *Caldwell v. Caldwell,* 5 Wis.2d 146, 158, 92 N.W.2d 356, 362 (1958), but that is not William's intent. William only accepted a conditional gift and purchased a portion of his parent's farm on land contract. He was offered no more, and accepted what he was offered.

Even if the intent were not clear, the facts before us are more akin to those in *Markham v. Markham,* 65 Wis.

2d 735, 223 N.W.2d 616 (1974), in which the court distinguished *Caldwell*, 5 Wis.2d 146. In *Markham*, the court refused to invalidate a transfer of stock in a closely held corporation to another stockholder · before the divorce where the wife had received some consideration, the transfer did not involve a substantial portion of the husband's assets, the transfer had a valid business purpose and there was no actual intent to deprive the wife of the property.

Though Evelyn lost access to the $186,000 gift, she received consideration for her joinder in the contract because she had the benefit of the farm income[2] and will share the refunded principal payments as part of the property settlement. Although there was no business purpose in providing for the reversion to Merle and Thelma, there were other valid family considerations on their part. We cannot find that such an economic result facilitates the dissolution of marriage.

Petitioner cites *Norris v. Norris*, 174 N.W.2d 368, 370 (Iowa 1970), for the proposition that it is against public policy to force a party to "endure conduct which would constitute grounds for divorce because of fear that the commencement of an action for divorce would deprive the person of contracted property rights and means of support." The statement in *Norris* is based on the obligation of a husband to support his wife, which the court concluded cannot be abrogated by an antenuptial agreement.[3] The land contract clause does not relieve William of his duty to support Evelyn or their children.

---

[2] The farm income was necessarily greater because the couple was paying interest on $98,000 rather than $286,000, the fair market value of the farm.

[3] The court in *Norris*, 174 N.W.2d 368, 370, stated:

Public policy has declared that certain obligations attach to a marriage contract including the duty of the husband to support his wife. It is against the public interest to permit the parties to enter into an antenuptial agreement relieving him of this duty.

The trial court found insufficient evidence of the duress claimed by Evelyn as to her signing the amended land contract. A finding with respect to duress is one of fact, *Wurtz v. Fleischman,* 89 Wis.2d 291, 278 N.W. 2d 266 (1979), and will not be disturbed on appeal unless it is against the great weight and clear preponderance of the evidence. *Onalaska Electrical Heating, Inc. v. Schaller,* 94 Wis.2d 493, 288 N.W.2d 829 (1980).

There is sufficient evidence in the record to support the trial court's finding that Evelyn was not under duress to an extent which invalidated her assent to the amended land contract. We therefore need not consider whether Evelyn would be entitled to void the amended land contract in the absence of her valid consent to it.

A contract may be held unenforceable on grounds of public policy only in cases free from doubt. *Continental Ins. Co. v. Daily Express, Inc.,* 68 Wis.2d 581, 229 N.W. 2d 617 (1975). The petitioner has not shown that the clause in the land contract is clearly in violation of public policy. We conclude that the contested clause in the land contract is not void for reasons of public policy.

(2) *Equitable Nature of the Clauses*

Petitioner argues that the divorce provision is inequitable within the meaning of sec. 767.255(11), Stats., which provides that the court in dividing the property of the parties must consider:

Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

Assuming sec. 767.255(11), Stats., applies to land contracts with third parties, the economic result is not inequitable.

**(3) *Severance of Invalid Portions of the Land Contract***

As the court concludes that the conditions of the land contract are valid, it is not necessary to consider the issue of severability.

*By the Court.*—Judgment affirmed.